IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REPUBLIC FIRST BANK,<br>    Plaintiff,<br>    v.<br><br>FIRST AMERICAN TITLE<br>INSURANCE COMPANY, et al.,<br>    Defendants. | CIVIL NO. 08-2333(NLH)(JS)<br><br>**OPINION** |

**APPEARANCES:**

WALTER WEIR, JR.
WEIR & PARTNERS, LLP
THE WIDENER BUILDING
1339 CHESTNUT STREET
SUITE 500
PHILADELPHIA, PA 19107

    On behalf of plaintiff

ROBERT L. GRUNDLOCK, JR.
RUBIN, EHRLICH & BUCKLEY, PC
731 ALEXANDER ROAD
PRINCETON, NJ 08540

    On behalf of defendants

**HILLMAN**, District Judge

    Presently before the Court is the motion of defendants for summary judgment on plaintiff's claim that defendants breached the parties' title insurance contract.  For the reasons expressed below, defendants' motion will be granted.

**BACKGROUND**

    This case concerns one aspect of a Ponzi-like scheme the now-bankrupt Mitchell Deutsch allegedly perpetrated on numerous creditors for the purchase of land, businesses, and personal items.

(See Def. Ex. 1.)  Prior to this alleged scheme being discovered, plaintiff Republic First Bank ("RFB") made several loans to Deutsch or his corporate entities.  At issue in this case are the loans RFB made to Oceans Below Properties, LLC, which consisted of Deutsch and one other individual member.

In June 2005, RFB loaned Oceans Below the first of two payments totaling $4.8 million[1] to purchase what the parties refer to as the Pier One Properties located in Toms River, New Jersey.  As security for the loan, Oceans Below executed a mortgage to RFB on Pier One.  Pier One consisted of two tracts of land, one owned by Ernest Napolitano and the other owned by Double N, Inc., a company owned by Napolitano.

At the closing of the loan on June 30, 2005, three important transactions occurred: (1) Napolitano conveyed the deed to his tract to Oceans Below, which were subsequently recorded in Ocean County, New Jersey; (2) Oceans Below acquired all of the capital stock of Double N from Napolitano; and (3) defendant First American Title Insurance Company ("First American"), through its title insurance agent, General Land Abstract,[2] issued a title commitment

---

[1] The loan was made in two parts, with the bulk of the loan being provided in June 2005 and the remainder paid out in November 2005.  This does not affect the analysis of RFB's claims regarding the June 2005 closing.

[2] RFB alleged two counts against General Land Abstract in its complaint, but it has since agreed that summary judgment should be entered in General Land Abstract's favor on both of its claims because of information learned through discovery.

that insured that the Oceans Below mortgage was an effective first lien on Pier One.  One transaction that did not occur, and which now serves as the basis for RFB's claim against First American, was Double N's conveyance of the deeds for its land tract to Ocean Below.

At some point in July 2005, First American's title insurance agent suggested to Oceans Below's counsel that a Confirmatory Deed of Consolidation be made describing both the Napolitano and Double N tracts, which were all now owned by Oceans Below.  That Confirmatory Deed was recorded in August 2005.

On November 4, 2005, RFB loaned Oceans Below additional funds with regard to the Pier One properties, and First American issued a second title commitment.  In that commitment, it is indicated that Oceans Below received title in the Napolitano tracts on June 30, 2005, and in the Double N tracts through the Confirmatory Deed.

In late 2006, RFB investigated accepting a second mortgage on Pier One, subordinate to its first mortgage on the property, to secure payment from Deutsch on another loan RFB had previously made to him to purchase a car wash, which Deutsch was looking to short sell.  For that second mortgage, RFB obtained a title commitment from another title insurance company that noted that although the Confirmatory Deed with regard to the Double N properties had been recorded, no specific deed for those tracts had been recorded.  RFB did not alert First American to this issue, and otherwise did not

3

take any action to rectify the perceived problem.[3]  The short sale, and second mortgage, were never consummated.

In July 2007, Oceans Below defaulted on the Pier One loans. On August 20, 2007, RFB filed a complaint in foreclosure against Oceans Below in this District.[4]  At that time, Oceans Below owed RFB almost $5 million.

In connection with filing the foreclosure action, RFB's counsel, who is different from RFB's counsel for the car wash short sale, discovered through a title search that although the Confirmatory Deed appears, the title search note states that the deed for the Double N tracts remains in Double N's name, and that deed had been recorded in 1960.  On August 28, 2007, RFB informed First American of the purported title defect and possible implication of the title insurance policy.  On September 7, 2007, RFB obtained a mortgage from Double N (which was now owned by Deutsch) on the Double N tracts.  That mortgage was recorded on September 11, 2007.

---

[3]As discussed more below, RFB claims that it is immaterial that it did not alert First American to the purported title defect because First American knew as of the June 2005 closing that Double N did not convey the deed to the tracts of land purchased by Oceans Below.  In contrast, First American argues that no deed problem existed because of the Confirmatory Deed, but even if it did, RFB's failure to alert First American to the problem in 2006, as well as its subsequent conduct, breached the title insurance contract.

[4]The foreclosure action was assigned to Judge Joel A. Pisano, Civil Action No. 03:07-3973, and the case was closed in December 2008.

On December 3, 2007, Double N filed for bankruptcy. Double N listed the Double N tracts as an asset of its bankruptcy estate. The trustee, however, challenged the priority of the Double N mortgage since it was given less than 90 days from the bankruptcy filing.[5]

In February 2008, RFB filed the instant suit against First American in the Philadelphia Superior Court. The case was removed to the Eastern District of Pennsylvania, and then transferred here in May 2008, on the premise that the case should be heard in the same district where the foreclosure and bankruptcy actions were pending.

On March 24, 2008, the Double N bankruptcy trustee filed a motion in the Oceans Below foreclosure action seeking approval of a settlement agreement that the trustee entered into with RFB. That settlement provided that RFB would purchase the Double N tracts from the trustee by a credit bid and pay the trustee $150,000. First American filed an objection to the trustee's motion, arguing

---

[5] As expounded on below, despite Double N claiming in bankruptcy that the properties were its sole asset, those properties had purportedly been transferred to Oceans Below via the Confirmatory Deed in August 2005. Presumably, because RFB was not sure whether its lien on the Double N properties was valid because it was unclear whether the properties were actually deeded to Oceans Below, it attempted to solidify its priority on the Double N properties by entering into a mortgage with Double N, which was now owned by Deutsch. Effectively, RFB had two mortgages on the same property--one mortgage with Oceans Below, if it was the deeded owner, and another with Double N, if it was the deeded owner. Oceans Below and Double N were both the corporate entities of Deutsch.

5

that Oceans Below owns the Double N tracts, as confirmed by the Confirmatory Deed, and as such, the Double N tracts are not part of the Double N estate.  First American also argued the RFB was attempting to side-step the foreclosure process by obtaining the Double N properties through the bankruptcy settlement.

At a hearing in April 2008, the trustee and RFB agreed to modify the settlement so that RFB would acquire the Double N properties by quitclaim deeds, and the court approved that settlement.  In June 2008, RFB acquired all Pier One properties, and paid the Double N bankruptcy trustee $150,000.  RFB subsequently sold Pier One for $4.2 million.

In this action, RFB claims that First American must pay out of the title insurance policy for RFB's losses on the Pier One properties.  RFB contends that First American insured that RFB had a secured interest in the Double N properties, but because no deed was ever transferred to Oceans Below, RFB never held a lien on the property, and all the resulting damages are covered by the policy.

First American argues in opposition that RFB breached the title insurance policy in several ways, thus negating its coverage and entitling First American to summary judgment.  As a primary matter, First American disputes RFB's perception that a title defect even existed.  First American argues that the transfer of the Double N deed at the June 30, 2005 closing was not necessary, as Deutsch purchased all the shares of Double N while also

purchasing the property, thus effectively becoming Double N, which is the recorded owner on the deed.  First American also contends that any defect was cured a month later through the recorded Confirmatory Deed, which solidified that the Double N properties were owned by Oceans Below.  With regard to the title insurance policy, First American argues that RFB breached its terms when it did not notify First American in 2006 when it first discovered the purported deed defect.  Then when it did notify First American of the problem in August 2007, RFB further breached the policy when it did not allow First American the opportunity to investigate the situation, as it instead unilaterally obtained a mortgage on the Double N property a week later, and thus effectively abandoned its foreclosure action where the ownership rights issue would have been resolved.

## DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

**C.   Analysis**

In its motion for summary judgment, First American weaves a tale of RFB's attempts to cover-up its mistakes, which first started through the bad Deutsch loans and then was compounded through its own misguided efforts to secure the collateral, which violated the insurance policy provisions. RFB, on the other hand, presents a simple story where an insured title defect existed from the beginning, First American knew of this defect all along yet did nothing to correct the problem, and, therefore it improperly declined coverage to RFB for RFB's resulting losses.

In order to resolve this dispute, the Court does not need to delve into the back story of the alleged Ponzi-like scheme, and it does not even need to decide what appears to be the major disagreement between parties--whether there was actually a defect in the deed.[6]  Further, the Court does not need to determine which

---

[6]First American has provided a report of a real estate expert who explains that the Confirmatory Deed provided the proper inquiry notice to as to the conveyance of the Double N properties to Oceans Below, and that RFB had a valid interest as mortgagee in the Double N properties. (See Def. Ex. 17.)  RFB has not provided any support, other than the general proposition that a person cannot transfer or mortgage a property to which he has no title, for its position that lack of a recorded deed for the Double N properties transfer was fatal to it security interest.  Even if it is true that the Confirmatory Deed did not cure the problem, and that a title defect existed from the day of the June 30, 2005 closing, there is no dispute that First American was not notified as to RFB's potential claim until

party should have acted first in correcting the deed problem, if such a problem did exist.[7]  Even if a deed problem existed from the beginning, and even if it should have been corrected at some point, the dispositive issue in this case is whether RFB violated the terms of the insurance contract before it suffered an insured loss due to the uncured defect.

"The purpose of title insurance is to indemnify buyers and lenders for loss resulting from non-record defects in the title of a parcel of real estate.  Such defects include those not discoverable from a search of the public records on the parcel, as well as losses caused by errors or mistakes in the search and examination.  Negligence need not be proved in order to recover." Ticor Title Ins. Co. v. F.T.C., 998 F.2d 1129, 1132 (3d Cir. 1993); Shotmeyer v. New Jersey Realty Title Ins. Co., 948 A.2d 600, 605 (N.J. 2008) (citation omitted) (explaining that to recover under a title insurance policy, the defect must have existed at the time

---

August 28, 2007, which is the trigger for coverage under the terms of the policy.  (Def. Ex. 18 ¶ 3.)  The title insurance policy insured RFB for any loss resulting from a defect at the time of the conveyance, and it is axiomatic that RFB would not be paid under the police if such defect remained "latent" or otherwise did not cause RFB any loss.  Ticor Title Ins. Co. v. F.T.C., 998 F.2d 1129, 1132 (3d Cir. 1993).

[7]The insurance policy requires that the insured notify the insurer regarding any potential claim "promptly," and if the insured does not provide the information in a timely manner, or otherwise fails to cooperate, the insurer can disclaim coverage. An insurer, however, must show that it has been prejudiced by the insured's conduct.  (See Def. Ex. 18.)  Each side points its finger at the other as to who should have acted first.

9

the insurance was purchased).  In order to purchase title insurance, buyers make a one-time premium payment at the time of purchase.  <u>Shotmeyer</u>, 948 A.2d at 605 (citation omitted).  The policy then continues in force indefinitely until the insured divests title or alters title in a way that terminates coverage. <u>Id.</u>

    Thus, in order for RFB to recover under the First American title insurance policy, it must show that the defect in title existed when the policy was issued, and that it suffered a loss due to that defect prior to altering title in a way that terminated its coverage.  This Court finds that RFB's actions violated the terms of the policy, and caused its own losses, so that First American is not obligated under the insurance policy to pay for those losses.

    As set forth above, in August 2007 when RFB discovered, for the second time through different counsel, the issue concerning the Double N deed, it filed a notice of claim with First American, alerting it to a potential problem.  At that point, RFB had not suffered any loss regarding the alleged defect, as no third party had attempted to supplant its status a first priority lien holder. Instead of waiting for First American to investigate and cure the problem, a week later, RFB took a mortgage on the Double N properties through the entity Double N, which was then wholly owned by Deutsch.  As the Court noted above, RFB already held a mortgage with Oceans Below (also Deutsch) for the Double N properties, and

10

it now held another mortgage for the same properties through Double N (Deutsch).  Thus, it appears that RFB believed that whichever entity--Double N or Oceans Below--turned out to be the deeded owner of the Double N properties, its security interest in those properties would be recognized.

The problem with this approach is that RFB had already asserted its rights as a lien holder on the Double N properties through its foreclosure action against Oceans Below for those properties.  One the one hand, RFB was attempting to recoup its loan to Oceans Below through the foreclosure of the Double N properties (and the entire Pier One properties), and on the other hand, it secured another mortgage in the exact same properties that it was foreclosing upon.  This appears irreconcilable.  At a minimum, it appears to be a violation of the title insurance policy, which requires the insured to cooperate with First National in the defense and prosecution of actions, or other efforts to establish title, and prohibits the insured from acting to hinder this right.  (Def. Ex. 17 ¶ 4.)

At that point, perhaps First American could have still resolved the title issue in the context of RFB's foreclosure action, despite the other mortgage.  If Oceans Below had contested RFB's right to foreclose on the Double N properties due to the deed issue, First American would have been required to show that RFB held proper title to the Double N properties through the

11

Confirmatory Deed.  If that position was unavailing, First American would have then been liable for RFB's losses.  See 11 Couch on Insurance 3d § 159:5 (1998)(explaining that title insurance "is an essentially unique form of insurance which 'covers' defects in the title to real property, generally by compensating the insured in dollars"), cited in Shotmeyer, 948 A.2d at 605.  The resolution of the deed issue never occurred, however, because Double N declared bankruptcy two months later, and listed the Double N properties as its sole asset.

   The Double N properties were then either subject to foreclosure or, if truly part of the Double N bankruptcy estate rather than deeded to Oceans Below, tied up in bankruptcy.  RFB's standing as priority lien holder on the Double N properties was also in jeopardy because the mortgage was challenged by the trustee due to its issuance less than 90 days before.  See 11 U.S.C. § 547 (providing that the trustee may avoid any transfer of an interest of the debtor in property if it was made "on or within 90 days before the date of the filing of the petition").  Instead of letting First American hash out the title issue, RFB acted unilaterally again.  RFB proposed a settlement with the trustee regarding the properties, and the trustee motioned to the foreclosure court to approve the settlement, since it would affect the very properties subject to the foreclosure action.  In practical effect, RFB's purchase of the Double N properties from

12

the bankruptcy trustee would cause it to be foreclosing on itself in the foreclosure action.

For reasons unknown to this Court, the court in the foreclosure action did not approve the settlement.[8] At that point, First American had filed letters to the foreclosure court objecting to the settlement, and alerting the court to the numerous issues concerning the Double N properties. (See, e.g., Def. Ex. 31.) The foreclosure court did, however, approve a settlement whereby RFB would acquire the Double N properties through quitclaim deeds and a payment to the trustee for $150,000. At that point, RFB owned the properties, and was able to sell them, along with the other Pier One tracts, for $4.2 million.[9]

Even though RFB thought that the lack of a deed transfer for the Double N properties back in June 2005 caused its interest in those properties to be unsecure, its actions cut-off First American's right under the title insurance policy to resolve that issue before RFB actually suffered a loss resulting from the

---

[8] It appears that Judge Pisano held oral argument on the trustee's motion. The parties have not provided transcripts of the proceeding, but this Court does not need to consider the reasons why Judge Pisano did not approve the settlement proposed by the trustee and RFB. The only relevant information is that a different settlement--through RFB's purchase of the Double N properties by quitclaim deeds--was approved, and, accordingly, also resolved the foreclosure action.

[9] Thus, through the Court's rough calculations, RFB's losses, without considering additional interest, fees and costs, total approximately $950,000.

defect.  Moreover, even if First American failed to timely undertake its obligations to cure any title defect, the insurance policy still required RFB to obtain consent from First American before settling any claim or suit.  (Def. Ex. 18 ¶ 8.)  This is not a case where an insured repeatedly implores the insurance company to fulfill its obligations and the insured has no choice but to take its own corrective action due to the insurance company's apathy or bad faith.  Instead, RFB took actions that it believed would protect its interests in a business relationship with Deutsch that was quickly going sour.  Although RFB was free to do whatever it determined was necessary without regard to its obligations under the title insurance policy, it cannot now seek to hold First American liable under that insurance policy in the wake of its unsanctioned actions.

Consequently, because it is clear that RFB's undisputed conduct breached the terms of the title insurance policy prior to suffering a compensable loss due to an insured title defect, RFB's breach of contract claim against First American fails.  Accordingly, First American is entitled to judgment in its favor.  An appropriate Order will be entered.

Date: December 20, 2010         s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.